UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **WEST CALCASIEU CAMERON HOSPITAL** | **CASE NO. 2:20-CV-01445** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **KATY A. MARINO** | **MAG. JUDGE KATHLEEN KAY** |

### MEMORANDUM RULING

Before the court is a Motion to Dismiss [doc. 7] filed under Federal Rule of Civil Procedure 12(b)(6) by defendant Calcasieu Cameron Hospital Service District, d/b/a West Calcasieu Cameron Hospital ("WCCH") and relating to the counter-claims [doc. 5] brought for breach of contract and detrimental reliance by defendant Katy A. Marino. Marino opposes the motion. Doc. 14. The matter came before the court for oral argument on March 4, 2021, and the undersigned now issues this ruling.

### I.
#### BACKGROUND

This suit arises from a resident assistance agreement ("RAA") between Katy Marino, a physician, and WCCH, a hospital in Sulphur, Louisiana. After graduating medical school, Marino began her general surgery residency at a hospital in Memphis, Tennessee. Doc. 5, p. 2. She alleges that during her first year with this program, she was recruited by employees of WCCH and offered financial assistance based on the prospect of eventually returning to her hometown of Sulphur to practice medicine. *Id.* In July 2013, the parties executed the RAA. *See* doc. 7, att. 2. Under the terms of this contract, WCCH

-1-

agreed to advance $25,000 a year to Marino for up to five years in exchange for her promise to open a practice in general surgery[1] in the hospital's primary service area upon completion of her residency and to maintain that practice for at least 48 months. *Id.* at 1–2 The RAA further provided that Marino must reimburse WCCH for the financial assistance received if she failed to meet her obligation. *Id.* Finally, it provided that Marino would complete her training and report to WCCH by July 2017, and would give progress reports on her training "on a reasonable schedule selected by [WCCH]" until that time. *Id.* at 3.

Marino admits that she received the full $125,000 contemplated under the RAA. *See* doc. 1, att. 1, p. 4 ¶ 7; doc. 5, p. 2 ¶ 7. She alleges, however, that WCCH never established a schedule for her to report on her training and that she instead had to reach out to the hospital when she had anything to report. Doc. 5, p. 6. She also asserts that, during the fourth year of her general surgery residency, she contacted WCCH CEO Janie Fruge and expressed an interest in pursuing a thoracic surgery fellowship. *Id.* Fruge allegedly encouraged the idea, putting Marino in touch with another WCCH physician to discuss the option and mentioning the ways such training could be put to use at WCCH and in the surrounding area. *Id.* at 6–7. With this encouragement and in reliance on alleged representations from WCCH that she could apply her training in practice at that hospital, Marino pursued a thoracic surgery fellowship. *Id.* at 8.

In August 2018, Marino states, she contacted WCCH to advise that she was in the final year of her two-year thoracic surgery fellowship and wanted to see what opportunities

---

[1] Specifically, the RAA noted that Marino was planning to specialize in general surgery and described this field as her "Practice." Doc. 7, att. 2, p. 1. It then went on to describe her obligations to establish a "Practice" in its service area in exchange for the financial assistance offered. *Id.* at 1–2.

-2-

were available within her specialty. *Id.* Fruge responded that "there [was] certainly a possibility for [Marino's] specialty in our area" and that she would "get back [to Marino] with options very soon." *Id.* at 8–9. Fruge failed to follow up, however, and so Marino reached out to her again in December 2018 to state that she was graduating in July 2019 and wished to know about her opportunities at WCCH. *Id.* at 9. This time Fruge responded the same month, indicating that she did not believe there would be enough volume of cases in the area to support a thoracic surgeon position. *Id.*

In July 2020 WCCH sent a letter to Marino stating that she was in default of the RAA and owed the hospital repayment of the $125,000, with interest, payable in installments as contemplated under the RAA. Doc. 7, att. 3. When Marino disputed the default, WCCH filed a breach of contract suit against her in the 14th Judicial District Court, Calcasieu Parish, Louisiana. Doc. 1, att. 1. Marino removed the suit to this court on the basis of diversity jurisdiction, 28 U.S.C. § 1332, and filed counterclaims against WCCH for breach of contract and detrimental reliance. Doc. 5, pp. 6–15. WCCH now moves to dismiss both counterclaims under Federal Rule of Civil Procedure 12(b)(6).

## II.
### LAW & APPLICATION

#### A. *Rule 12(b)(6) Standards*

Rule 12(b)(6) allows for dismissal of a claim when a plaintiff "fail[s] to state a claim upon which relief can be granted." When reviewing such a motion, the court should focus on the complaint and its attachments. *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012). The court can also consider documents referenced in and central to a party's claims,

as well as matters of which it may take judicial notice. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000); *Hall v. Hodgkins*, 305 Fed. App'x 224, 227 (5th Cir. 2008) (unpublished).

Such motions are reviewed with the court "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). However, "the plaintiff must plead enough facts 'to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Accordingly, the court's task is not to evaluate the plaintiff's likelihood of success but instead to determine whether the claim is both legally cognizable and plausible. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

## B. Application

### 1. Breach of Contract

To state a claim for breach of contract under Louisiana law, a plaintiff must allege a breach of a specific provision of the contract. *Blackstone v. Chase Manhattan Mortgage Corp.*, 802 F.Supp.2d 732, 738 (E.D. La. 2011). Here Marino alleges that WCCH breached its "obligation . . . to assist [her] in setting up a practice in Sulphur, Louisiana, and receiving a position as a Thoracic Surgeon at WCCH" and to "enter and carry out all of its obligations of the contract, and assurances made by Ms. Fruge, in good faith." Doc. 5, p. 12 ¶¶ 3, 5. As WCCH emphasizes, the RAA[2] clearly contemplates Marino's establishment of a

---

[2] The RAA is attached to WCCH's complaint but not Marino's. *See* doc. 1, att. 1, pp. 8–15. However, its terms are clearly "necessary to establish an element" of her counterclaims. *Johnson v. Wells Fargo Bank, N.A.*, 999 F.Supp.2d 919, 926 (N.D. Tex. 2014) (internal quotations omitted). Accordingly, it is within the scope of this motion.

practice in general surgery. Additionally, WCCH maintains that it fulfilled its only obligations under the contract by providing the $125,000 in financial assistance to Marino over the course of her residency. Marino argues, however, that WCCH's representations, through Fruge, amounted to an oral modification of the contract allowing her to convert the general surgery requirements to a thoracic surgery practice. Doc. 14, pp. 14–16. She also insists that her allegations support breaches of WCCH's duty to (1) maintain a schedule for progress report, in violation of § 2, (2) mutually determine with Marino the date on which she would begin this practice, in violation of § 3, and (3) allow Marino to become a member of the WCCH staff, in violation of § 6(E). *Id.* at 16; *see* doc. 5, pp. 9–10, ¶¶ 13–15.

Under Louisiana law, a written contract may be modified by oral amendment or by the conduct of the parties even if the contract contains a provision indicating that any modification must be made in writing.[3] *Taita Chem. Co., Ltd. v. Westlake Styrene Corp.*, 246 F.3d 377, 387 (5th Cir. 2001). Such modification requires a meeting of the minds, however, and the burden falls on the party asserting a subsequent amendment to prove the

---

[3] Here the RAA contains no such express provision, but does provide under § 13:
> This Agreement sets forth all (and is intended by all parties to be an integration of all) of the promises, agreements and understandings among the parties hereto with respect to the subject matter hereof, and there are no promises, agreements or understandings, oral, written, expressed or implied, among them other than as set forth or incorporated herein.

Doc. 7, att. 2, p. 6. WCCH analogizes this clause to the one set forth in *Omnitech International, Inc. v. Clorox Co.*, 11 F.3d 1316 (5th Cir. 1994), where the Fifth Circuit affirmed the district court's refusal to consider parol evidence based on a finding that the written contract represented the sum total of the parties' agreement. The merger clause in *Omnitech*, however, included an express provision limiting the means by which the agreement could be modified. *Id.* at 1328. And even with the inclusion of this language, the court recognized that the admissibility of parol evidence was a fact-bound determination that could not be determined *per se* through the existence of a merger clause. *Id.* Because the scope of all parol evidence is not before the court at this stage, and because the merger clause contains no specific terms regarding subsequent modification, the court assigns little persuasive weight to the exclusion of parol evidence under *Omnitech* and its progeny for this matter.

modification and the parties' consent thereto. *Id.* The existence of a valid modification to a written contract is a question of fact, for which the court may admit parol evidence. *Couvillion Grp., LLC v. Quality First Construction, LLC*, 2020 WL 5495167, at *5 (E.D. La. Sep. 11, 2020).

Here both parties rely on email correspondence between Marino and Fruge to show the existence or lack thereof of any subsequent modification.[4] *See* doc. 1, att. 1, pp. 16–28. This batch of correspondence also contains a message from Aleta Benoit, WCCH Medical Staff Services Director, from July 2017 in which Benoit provides Marino with an application and states that additional privileges can be requested after she has completed her thoracic surgery fellowship. *Id.* at 18. The emails, however, do not include all of the communications referenced by Marino in her counterclaims and therefore cannot be considered as an adequate representation of the potential parol evidence regarding any modification. With the allegations in the complaint construed in a light most favorable to Marino, the encouragement of Fruge and any other WCCH staff about the availability of thoracic surgery positions at the hospital – coupled with the fact that the hospital did not pursue Marino for any default of the RAA until after she had completed her thoracic fellowship – may be enough to show a modification of the RAA. The existence of a modification of the practice term would likewise impact any obligations WCCH had under the remainder of the contract. Accordingly, the motion should be denied as to this claim.

---

[4] These emails were attached to WCCH's complaint and referenced in Marino's counterclaims; the court also considers them central to her claims and within the scope of this motion.

### 2. *Detrimental Reliance*

WCCH also moves for dismissal of Marino's counter-claim for detrimental reliance. Under Louisiana law, a party may be obligated by a promise when he knew or should have known that his promise would induce the other to rely on it to his detriment. La. Civ. Code art. 1967. The doctrine of detrimental reliance is "designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence," and usually functions in the absence of an enforceable written contract between the parties. *Drs. Bethea, Moustoukas and Weaver LLC v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 403 (5th Cir. 2004) (internal quotations omitted). To prevail, the plaintiff must show: (1) a representation by conduct or word; (2) reasonable reliance thereon; and (3) a detrimental change in position due to this reliance. *Suire v. Lafayette City-Par. Consol. Gov't*, 907 So.2d 37, 37 (La. 2005). The primary inquiry is "not whether the parties intended to perform, but . . . whether a representation was made in such a manner that the promisor should have expected the promise to rely on it." *Id.* Louisiana law disfavors such claims and courts must scrutinize them carefully. *In re Ark-La-Tex Timber Co., Inc.*, 482 F.3d 319, 334 (5th Cir. 2007).

WCCH argues that Fruge's alleged encouragement of Marino's thoracic surgery training could not have reasonably induced Marino to believe that such a position would be available to her, especially in light of the RAA's terms and its merger clause (supra, note 3). To this end, as it notes, the Fifth Circuit has "found reliance on extra-contractual representations to be unreasonable as a matter of law because the representations were inconsistent with an unambiguous fully-integrated written contract." *Caplan v. Ochsner*

*Clinic, LLC*, 799 F.Supp.2d 648, 651–52 (E.D. La. 2011) (collecting cases). Here, however, the merger clause contained no express bar on subsequent oral modification. Additionally, unlike *Caplan* and many of the cases described therein, this matter is before the court on a 12(b)(6) motion to dismiss rather than a motion for summary judgment. The court does not yet have a full picture of the representations and/or conduct made by WCCH, and must construe what has been alleged in a light most favorable to Marino. Marino has alleged that WCCH encouraged her pursuit of thoracic surgery training and did not give her any notice that she was in default of the RAA after she completed her general surgery training and entered directly into her thoracic surgery fellowship. This is enough, at the pleading stage, to support her reasonable belief that a thoracic surgery position would be made available to her or, at the very least, that she would not be penalized under the RAA if one was not. Accordingly, the motion to dismiss is denied as to this claim.

### III.
#### CONCLUSION

For the reasons stated above, the Motion to Dismiss [doc. 7] will be **DENIED**.

**THUS DONE AND SIGNED** in Chambers on this 5th day of March, 2021.

*[signature]*
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**